Thank you, Your Honor. Thank you. May it please the court, my name is John Seidlitz. I have the privilege to be here representing Kortney McGee, an individual who had applied for Social Security or Supplemental Security income benefits, had attended a hearing, done the appeals process, and been denied following hearing by the Administrative Law Judge. She's a young woman who suffered cerebral palsy affecting her right leg and her right arm. She applies for benefits at 19. Well, at 19 was the time that she attended the hearing. She was actually a child when she first applied. So one of the issues before the hearing was that the Administrative Law Judge had substantial evidence to support the decision denying both childhood listings for cerebral palsy and adult listings. The ALJ following the hearing found that she could perform medium work, found that Kortney's testimony about her limitations was not credible, and Kortney did not meet any of the listings. Now one of the things that happens is, in terms of the medical that the Administrative Law Judge was faced with, in addition to issues involving her foot on the right side and her hand on the right side, because of the leg length discrepancy and her attempt to be as active as she could be, she starts suffering from problems on her left side. Ultimately she's going to have, following the surgery she had on her right hand and her right leg as a child, she ultimately will have surgery on her left knee and as an adult then later will have surgery and have additional surgeries recommended. So throughout the whole time frame she's treating for significant limitations requiring surgery and at some point being told surgery is not going to help in terms of the hand, the contracture of the hand. Now in addition to those medical issues, and I don't want to gloss over them and I've tried to cut out some argument to keep within the court time frame here, so I'm changing kind of on the go, but in addition to those... Since you're trying to conserve time, can I have a question? Were you counsel at the hearing? No. Okay, one of the things that I'd like you to address, it comes from pages 61 and well 60 and 61 of the hearing and there is a hypothetical question directed by, to the vocational expert by Ms. McKee's counsel and it's a critical question and answer and the question in part says, asked whether the limitations that you're saying should have been taken into account would interfere with a production type of work and it says with these limitations, is there any work available in the national economy that you could identify? Answer, given that hypothetical, there would inaudible. Okay, then the next question is, would there be and then it's Well, so the inaudible blocks out a very critical answer. I think that's absolutely accurate. In fact, we don't know how much of a gap exists in there in terms of questions and answers because it's inaudible. We don't know from the person transcribing, were there additional questions or was there, the witness was just quiet. We don't know. I think that's absolutely critical. I think it's if we say that she doesn't meet a listing, which we have argued she meets listings, we don't need to consider the vocational testimony. But if you get beyond that, one of the problems that the commissioner has before this court is the administrative law judge did not incorporate all the limitations that Courtney McKee has in the hypotheticals that he relies upon to say, well, she can do medium work. Her urinary problems are significant. They're uncontested. Well, I wonder about that. I recognize your argument is that the ALJ's hypothetical did not include the incontinence. Correct. Which can certainly be disabling. I recognize that. On the other hand, it did include the prior work that your client had been able to do. Prior part-time work. Right, and I recognize it's not a step four question. It's a step five question. But what about that? Is it fair for us to infer that her incontinence did not prevent her from performing those other works as an assistant janitor and as a grocery bagger? And what I think has to be, to answer that question, I have to rely upon her testimony at the hearing, which was, I can't be very far from a bathroom. Now, as a janitor, I think she's probably got some control over her work shift and the ability to leave on a moment's notice when she needs to. The bagger part, I don't know if there was any testimony or, you know, what the kind of rules are there. But in terms of a time frame, you know, she's on an hour voiding schedule and limiting liquids. And so, how much time was she working and how regular? Okay, so, but my question is a little different. My question is, the problem with the second hypothetical asked by the attorney is what Judge Fischer noted. We don't know what the answer was because it was inaudible. And the ALJ's question, hypothetical question, omitted, if nothing else, I just took the one example of the incontinence problem. But what about the fact that it included reference to the prior position she was able to work at? Well, if we assume the answer is she can do the prior positions, that's not substantial gainful activity as to disable her because it doesn't qualify in terms of a time frame. Because they were part-time? Because they're part-time. And we don't know how long she's doing the work. We don't know on a regular schedule if she's doing the work. And because of her own personal needs in terms of water consumption and things, if she's planning to work on Monday, Wednesday, and Friday for three hours, she limits her water intake for a couple hours before and a couple hours after. As opposed to, if she's working substantial gainful activity, the need to become dehydrated in order to limit water consumption. Are there other non-exertional limitations that the ALJ's hypothetical did not take into account? You know, I think so because he did not incorporate her problems with pain in sitting because she talks about in the record show problems with her hips and she's got a, I'm not going to pronounce it right, it's in the brief, but she's got a problem on the femoral head that's causing pain with sitting. And so that wasn't in there. In terms of her ability to walk without pain, he just assumed she could walk because at one time she told her doctor she was running a mile a day. And so he incorporated that limitation as opposed to when grandma comes into the doc to say, she's not running a mile a day. She's kind of, because of this four centimeter leg length deficiency, she's kind of walking, running in terms of getting exercise. And that's another limit, that's another limitation that I don't believe was proposed to the vocational consultant. Which I think is why the commissioner is forced to argue that the grids then apply. Ignore the vocational consultant because clearly the testimony of the vocational consultant does not support denial of the benefits. I'd like to come back to the Q&A because I was struck by the follow-on to the inaudible. The attorney says, would there be, that could be read as responding to an answer that there would be some jobs available in the economy. Let's assume, let's assume that the answer was there would be. Assume that. If that were the answer, would the ALJ be required to address the limitations in his, and address that exchange in his decision? Ultimately he would have been because he would have been required to ask for how many numbers do we have? Do we have significant numbers in the national economy or in the regions that the vocational consultant is testifying from? And so there would have been some kind of follow-up if he had indicated jobs were available to say, give me some significant numbers nationally and locally for any of the positions that would be have been identified. Counselor, your time is up, but we took up a lot of your time in questioning and we shortened your time shortly before our argument. So why don't you go ahead and take another minute if you want. All right. We'll give you a minute of rebuttal. All right. I think one of the focus, and I saw you're giving me a minute now. Thank you. So in terms of the get to the point of the issues on the vocational testimony, although I think that is decisive if you get to that point. I think that this is a case that can be reversed as opposed to remanded because she meets the listings. Certainly if she doesn't meet them as a child because there were some surgeries to correct some of the deficiencies, the tendons that were getting thickened and not. But later when they do an MRI or a CT and they actually measure the leg length deficiency, they discover for the first time it was far more significant than it had been before. And there's no doubt that the objective examinations indicate she couldn't walk. She had limitations in walking. She had an antalgic gait because the heel can't get down. Second, in terms of the hand, which would be the second part required to extremities. With the hand, the doctor notes, if she extends out her fingers, then she can't move the wrist. She can't move it. So she kind of has a choice in terms of motion, range of motion. My time is up. I appreciate that. Thank you, counsel. And we'll now hear from Ms. Milano. May it please the court, my name is Jessica Milano. I represent Carolyn Colvin, Acting Social Security Commissioner. There's no dispute in this case that Ms. McGee has a very serious medical condition, cerebral palsy. In fact, twice in his decision, the ALJ notes that his findings and that his denial of disability should not be read in any way as minimizing her condition. However, Social Security disability regulations require both a cause and effect. The cause being the medical problem and the effect being the resultant functional limitation. Here, the ALJ reasonably found that despite having the cause, the cerebral palsy, the effect did not rise to that level of functional limitation required. In fact, the evidence showed that Ms. McGee reported that after surgeries, she was running and exercising and dancing. Ms. McGee testified that she graduated from high school. She took AP classes and honors classes and despite having limitations with her right hand, she testified at the administrative hearing that she did not require any accommodations at school in Council, what do we do about, I agree with you, there's a lot in the record to tell me that this is an accomplished young woman in many ways, but that doesn't mean she doesn't have trouble and the question is really gainful employment. So what do we do about the problems with the hypothetical questions put to the voc rehab expert? Your Honor, there is not, the fact that there was a second hypothetical question set forth by the attorney does not affect that the ALJ did not find those limitations credible. Let's take the first one first, the ALJ's question, which did not include all of the non-exertional limitations, right? No, Your Honor, I believe it did include all of the limitations that he found credible. You're saying he found that there wasn't an incontinence problem? Correct. Okay, and no standing limitation? Your Honor, the incontinence was a severe impairment that didn't cause any significant limitations as would affect the eight-hour, the standard eight-hour work day, which has a lunch break and multiple breaks throughout the day. And standing limitations, no, Your Honor, the ALJ found that based upon the number of activities that she was engaged in and based upon the fact that physicians didn't put forth any restrictions, that no, her testified limitations were not credible. Let's assume that we don't accept what you just said and that the question and answer, what do we do with the fact that the answer of the vocational expert is inaudible? Because there is no specific attention paid to that interchange by the ALJ, and as counsel said, if the answer had been affirmative, that jobs would have been available, the ALJ would have then proceeded after counsel said no further questions, would have gone on to address the kinds of jobs that would be nonetheless still available in the The fact that the ALJ didn't make follow-up questions and the fact that the ALJ didn't include those restrictions demonstrates that he didn't find they were credible. Counsel, at ER 21, he found urinary urgency at step three. Before attaining age 18, claimant had the following severe impairments, and he lists cerebral palsy on the right, leg discrepancy, and urinary urgency. So what am I misunderstanding about this? You're not, Your Honor. This is his discussion of Childhood application? Yes, and the ALJ is discussing the establishment of severe impairments. However, under Ninth Circuit case law, Bray v. Astru, 554 F3, 1169, 2009 case, simply because there is a finding that a condition is a severe impairment does not necessarily require that the ALJ includes some explicit limitation related thereto within residual functional capacity finding. But he doesn't include it in his hypothetical, is my problem, and that he put to the voc rehab, the one for which we do have an answer, and I would like you to address that. Why should I not be troubled by that? Why doesn't that require remand? Your Honor, when discussing residual functional capacity and placing that into the hypothetical question, it's not about the conditions or the diagnoses that a claimant has. Rather, it's about how those translate functionally. Yes, I understand. So here, she testified that she, well, first of all, she testified that Vesicare was a... It had helped her. The medication had helped her, but she still, I don't think there's anything that I saw, but please correct me if I'm wrong. I didn't see anything contradicting that she was on a one-hour voiding schedule, and I don't think that was, you know, included in the hypothetical, and I just want to be really fair and ask you to address that because that's a problem I've got with this case. Your Honor, the one-hour voiding schedule, I believe that was in April of  August. Ms. McGee didn't go back for much treatment in regards to urinary problems thereafter. So was the ALJ permitted to assume that that was no longer a problem for her, or what is your... You're losing me here. I'm not understanding your point. The ALJ found that it was effectively treated to the extent that she didn't have significant problems. Where is that finding? I'm looking at ER 24. That's probably where you want to be, I think. Right, Your Honor. Is that what you're relying on, that paragraph there? Yes. Okay, thank you. So coming back to the question that I've asked you on the inaudible response, you said that if, or as I understood it, that because the ALJ didn't get into any specifics about numbers and so on, that that means that the answer what? Had to be that there wouldn't be any. I apologize, Your Honor. That's not what I meant to imply. The ALJ didn't ask follow-up questions, but that is because the ALJ is not required to accept a hypothetical question that contains limitations he didn't find credible. So the fact that he didn't ask follow-up questions doesn't mean one way or the other. It's simply he didn't find those limitations credible, so he didn't see reason to continue on with that line of questioning, whether, you know, it doesn't matter what the response was. So if the expert said there would be none? Your Honor, I apologize. And so it doesn't make any difference if the vocational expert says under those conditions, and the sit-stand, that it would interfere with production work. If that was the response, you're saying he doesn't have to address that? No, the ALJ is not bound to accept as true the restrictions offered by counsel, but rather is free to accept or reject, and that is in multiple Ninth Circuit cases, including Magdalene v. Bowen, 881 F. 2nd. I understand, but he doesn't address that interchange at all. He doesn't say what you're saying. Where does he talk about that question and answer? He presumably heard it. He doesn't need to discuss that question if it wasn't limitations that he had found were credible. So the fact that the ALJ doesn't discuss it in its decision I think it would be remarkable if he allows the question to go forward and actually clarifies it, and then he doesn't address it as part of his decision. Your Honor. Where do we find anywhere where the, I understand that the ALJ didn't understand that the answer hadn't been picked up by the transcriber. Or the court reporter. But if counsel poses a question that addresses the very question about whether there would be a modification in the jobs, you're saying he can just blow it off because he didn't find the limitations credible? Your Honor, I don't want to say. Assuming that the vocational expert, I'm assuming, because we don't know what the V.E. said, but if the vocational expert said under those circumstances there would be no jobs available. Right, Your Honor. When it's restrictions posed by counsel, those aren't limitations that the ALJ has accepted. So if the ALJ has not accepted those as credible limitations supported by the record as a whole, then the ALJ isn't required to address them. No. Even if the V.E. says those were the case. So he's clear and free so long as the V.E. testimony responds to a question that the ALJ says, well, I don't buy those restrictions. He doesn't have to address that. Correct, Your Honor. Even though, what is it, Tackett says specifically that you have to have a vocational expert in order to address non-grid limitations. Your Honor. So I'm a little curious about the process where the ALJ doesn't have to address what the V.E. had said in his or her answer. Where an ALJ is going to rely on vocational expert testimony, the hypothetical must match the restrictions and limitations that the ALJ found credible and supported by the record. Here I want to also point out that the ALJ made two findings at Step 5, either one of which are adequate to meet his burden, and that is the ALJ found that under the grids, such as age, education, prior work experience, under the grids, Ms. Magee was not, the grids directed a finding that she's not disabled. And I want to point out to the Court, too, that that includes not only medium exertional work, that includes 1,200 light occupational jobs as well as sedentary occupational jobs.  The ALJ made an alternative finding that the vocational expert's testimony supported a finding that she could also do these other professions and gave examples. Thus, even if there were a flaw in this vocational expert testimony, which the Commissioner's position is that there isn't because... Counsel, you've gone well over your time, although we took you there with questions. So I think I'm going to have to ask you to conclude your argument. Unless Judge Fischer or Judge Christen have another question they'd like you to answer. I think we got your point. Thank you. We appreciate it. Mr. Silas, we're giving you a minute for rebuttal, but you do not have to use it all up. We appreciate the decision. And the problem is the lack of specificity as to limitations, timeframes, in terms of Courtney's ability to work at a part-time job. How did she do that? How many hours were there in terms of how often she had any type of waiting schedule? If the administrative law judge is looking at an individual and questioning whether their credibility is accurate, the court has repeatedly said, give us some specificity so we don't look at your decision as arbitrary. And that's the problem, I think, with what's missing here. Thank you. Thank you, and I thank both counsel for excellent arguments, and the McGee case shall be submitted. Also, thanks for traveling so far to see us here today.
judges: Fisher, Gould, Christen